United States District Court
Southern District of Texas
**ENTERED**
September 06, 2018
David J. Bradley, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| RICHARD MORENO, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. H-17-2164 |
| | § | |
| NANCY A. BERRYHILL, | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the court is Plaintiff's Motion for Summary Judgment (Docket Entry No. 11) and Defendant's Cross-Motion for Summary Judgment. (Docket Entry No. 13.) This case was referred to the magistrate judge for findings and recommendation pursuant to 28 U.S.C. § 636(b)(1). (Docket Entry No. 7.) Having considered the motions, filings, and applicable law, the court recommends that each motion be granted in part and denied in part, and that the case be remanded to the Commissioner for further proceedings.

## I.    Factual Background and Proceedings Below

In this Social Security case, Richard J. Moreno appeals the Commissioner's final decision denying his application for social security benefits. (Docket Entry No. 1.) Moreno filed claims for social security disability insurance benefits on December 17, 2012, alleging disability due to speech problems, back injuries, neck injuries, brain injuries, arthritis, diabetes mellitus, depression, and learning

1

problems, beginning on September 26, 2012. T. 411, 415.[1] Moreno claims his disabilities were caused by a motorcycle accident on September 26, 2012. T. 74. His last job before the accident was as an electrical specialist from November 2011 to September 2012. T. 417.

The administrative law judge ("ALJ") denied Moreno's first claim on April 5, 2013, and again, on reconsideration, on July 11, 2013. T. 191. A hearing before ALJ Hallie Larsen was held on November 4, 2014. T. 119–161. At the hearing, Moreno, Moreno's wife, and a vocational expert testified. T. 119–61, 191. Asked what "the main thing is keeping [him] from working," Moreno listed "the pain," traumatic brain injury causing sleeplessness, side effects from the medication and shots he receives, depression, sleep apnea, and arthritis. T. 127. He testified repeatedly that "more activity" causes "more pain." T. 131, 136–40.

The ALJ issued a Partially Favorable Decision on December 12, 2014, finding that:

- Moreno suffered from degenerative disc disease of the lumbar, thoracic, and cervical spine; traumatic brain injury; and major depressive disorder. T. 193.
- Moreno was limited to light unskilled jobs, T. 195, and had no transferrable skills to either the light or sedentary level. T. 200.
- Moreno was disabled as of December 12, 2014. T. 195.

---

[1] The administrative record in this case was filed as twenty-five separate docket entries. (Docket Entry Nos. 6-1–6-25.) Citations to the record correspond to the numbering system displayed on the bottom-right corner of each page of the record.

In a letter dated December 30, 2014, Moreno requested review of ALJ Larsen's decision, claiming an earlier onset date of September 26, 2012, corresponding to his motorcycle collision. T. 300.

Moreno began receiving disability insurance benefits in August of 2015. T. 110. On May 15, 2015, while his review request was pending, an anonymous tipper contacted the Social Security Administration's Cooperative Disability Investigations (CDI) Unit, Salt Lake City division[2] and reported inconsistencies between Moreno's daily functions and his claimed disabilities. T. 1213. The anonymous tip alleged that Moreno had been doing "major construction" on his home, including construction of a brick fence. T. 1213. After reviewing the available evidence, the CDI Unit accepted the matter for investigation. T. 1213.

On June 19, 2015, under the pretext of inspecting Moreno's garage renovations for housing code compliance, a CDI special agent accompanied a local building inspector to Moreno's home. The CDI special agent submitted a report to the Social Security Administration's Appeals Council documenting his observations during the visit. T. 1219–20. The CDI agent's report included his assessment that certain of Moreno's statements in his application for disability benefits were inconsistent with his actual capacities. T. 1214–18. The agent reported:

---

[2] The CDI Unit is tasked with obtaining evidence to resolve allegations of fraud in the Social Security Administration's disability programs. Office of the Inspector General, *Cooperative Disability Investigations*, Social Security Administration (2018), https://oig.ssa.gov/cooperative-disability-investigations-cdi; *Knox v. Astrue*, 660 F. Supp. 2d 790, 800 (S.D. Tex. 2009) (considering CDI report).

- Moreno walked down three steps and on uneven terrain with no assistive device, normal gait, and no apparent impairments or difficulties. T. 1220.

- Moreno stated he is a "master electrician and has done/is doing all of the electrical work on the [garage renovation] project," "is planning to do rock work behind the stove and around the entrance door," and "plans to install a water feature." Moreno said he "does the work 'when [he] [has] the money.'" T. 1220–21.

- Moreno demonstrated "very good recall" of work done, dates worked, and details concerning the projects. T. 1220.

- Moreno claimed ownership of a motorcycle parked in front of his garage and stated that "he loves to ride his 'toy.'" Less than three hours later, the agent observed Moreno's motorcycle parked in the driveway behind a gate; a week later, another agent observed the motorcycle in the driveway but at the side of the house. T. 1221.

- On May 17, 2015 (two days after the anonymous tip), the Salt Lake City Mass Choir Project's Facebook page posted a photograph of the choir performing—including Moreno, who the agent described as "clapping and singing." T. 1222.

Significantly, the report included no finding that Moreno had taken part in "major construction" or the building of a wall. Those allegations were in the anonymous tip only. T. 1213. On May 7, 2016, the Appeals Council remanded the case to the ALJ based on the CDI Report, which the Appeals Council considered "new and material evidence." T. 210–11.

A different ALJ presided over Moreno's second hearing on September 21, 2016. During that hearing, the ALJ considered the testimony of Moreno, his wife, an impartial vocational expert, and the CDI Report. T. 54–118 (the ALJ directing counsel for plaintiff to "focus your questions on what the CDI might have brought up").

4

In a decision issued October 13, 2016, the ALJ found that Moreno meets the insured status requirements of the Social Security Act through September 30, 2017, and that Moreno has not engaged in substantial gainful activity since September 26, 2012. T. 12. He found that Moreno has the severe impairments of (*i*) degenerative disc disease in the cervical, thoracic, and lumbar spine, (ii) type II diabetes mellitus, and (iii) obesity, but that Moreno's claimed mental impairments were non-severe. T. 12, 17. He found that Moreno "is capable of performing his past relevant work," and therefore not disabled. T. 29.

Moreno filed this action on July 13, 2017, and filed his motion for summary judgment on January 5, 2018, raising two points of error: (1) that the ALJ erred by ruling that Moreno has no severe mental impairment, and (2) that the ALJ erred in finding that Moreno could perform his past relevant work. (Docket Entry No. 11 at 6, 15–16.) The Commissioner filed her cross-motion for summary judgment on February 3, 2018. (Docket Entry No. 13.)

## II.    Standard of Review

This court's "review of the ALJ's determination is 'highly deferential': [it] ask[s] only whether substantial evidence supports the decision and whether the correct legal standards were employed." *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018). The court "does not reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). "Conflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* "A decision is supported by substantial evidence if

credible evidentiary choices or medical findings support the decision." *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Id.*

## III.   The Five-Step Approach

The Social Security Act provides disability insurance benefits to people who have contributed to the program and have a physical or mental disability. *See* 42 U.S.C. § 423. It defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." *See* 42 U.S.C. § 423(d)(1)(A).

The Commissioner uses a sequential, five-step approach to determine whether the claimant is disabled. (1) An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). (2) An individual who does not have a "severe impairment" will not be found to be disabled. *Id.* (3) An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors. *Id.* (4) If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made. *Id.* (5) If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed. *Id.* The claimant bears the burden of proof on the first four steps, but the Commissioner bears the burden on

the fifth step. *Salmond*, 892 F.3d at 817. A finding that the claimant is disabled or is not disabled at any point in the five-step review terminates the analysis. *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988).

## IV.   Analysis

### A. The ALJ did not err in concluding that Moreno's mental impairments were non-severe.

At step one, the ALJ found that Moreno has not engaged in substantial gainful activity since September 26, 2012. T. 12. At step two, the ALJ determined that Moreno's degenerative disc disease, type II diabetes, and obesity constituted severe impairments, but that Moreno did not suffer from any severe mental impairment. T. 12. In evaluating the severity of Moreno's mental impairments, the ALJ relied on the reports of state agency psychological consultants who evaluated Moreno's mental impairments for his initial disability determination and on reconsideration, T. 168–70, 182–84, the CDI Report, T. 1210–24, and Moreno's psychological treatment records, *e.g.*, T. 575–81, 715–35, 736–61, 762–844. To that evidence the ALJ applied the following standards.

"An impairment can be considered as *not* severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). This second step requires the claimant to make a *de minimis* showing. *See Anthony v. Sullivan*, 954 F.2d 289, 293 n.5 (5th Cir. 1992). The ALJ assessed Moreno's mental impairments in accordance with 20 C.F.R. § 404.1520a, which

describes the "special technique" of mental impairment evaluations: "Under the special technique, we must first evaluate your pertinent symptoms, signs, and laboratory findings to determine whether you have a medically determinable mental impairment(s)." *Randall v. Astrue*, 570 F.3d 651, 658 (5th Cir. 2009) (quoting § 404.1520a(b)(1), (c)(2), (d)).

If there is a medically determinable mental impairment, the ALJ must then determine the degree of a claimant's functionality. Under the regulations in place at the time of the ALJ's decision, the "special technique" required the ALJ to consider the claimant's: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. *Garcia v. Berryhill*, 880 F.3d 700, 705 (5th Cir. 2018) (finding no legal error where ALJ applied "special technique" to determine claimant had no severe mental impairment). The ALJ's decision "must include a specific finding as to the degree of limitation of each of the functional areas." 20 C.F.R. § 404.1520a(e)(4). The degree of limitation in each category is based on a five-point scale: "none," "mild," "moderate," "marked," or "extreme." 20 C.F.R. § 404.1520a(c)(4). A rating of "none" or "mild" in all four areas will generally result in a finding that the impairment is not severe. 20 C.F.R. § 404.1520a(d)(1).

The ALJ applied the proper standard in analyzing severe impairments. T. 11 (recognizing and applying the standard announced in *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985)). In determining that Moreno's mental impairments were non-severe, the ALJ applied the "special technique" and rated Moreno's limitations in the first three categories as "mild" and those in the fourth as "none," providing

8

detailed explanations for each rating. T. 15–17. The ALJ's examination of the record focused primarily on the state agency medical consultants' non-examining review of Moreno's file, which in turn involved review of records from Moreno's treatment with Dr. Shulimson, Davis Hospital, and Wasatch Peak Family Practice.

In April 2013, Charles Raps, a state agency psychological consultant, rated Moreno's "[Mental Health] nonsevere." T. 167. In doing so, he rated Moreno's impairments in each of the four categories of the "special technique" either "none" or "mild." T. 167. Raps cited the conclusions of another examining clinician, Dr. Shulimson, that Moreno demonstrated "no evidence of cognitive impairments" and had "IQ and cognitive function all average" in the course of several testing sessions in October and November of 2012. T. 167 (cited in T. 14).

A second evaluating consultant, Dr. Philip Cali, on reconsideration of Moreno's application in July 2013, "affirmed" the initial determination. T. 181. Dr. Cali also rated Moreno's impairments in each of the four categories of the "special technique" either "mild" or "none." T. 180. Dr. Cali considered that Moreno had been admitted overnight to a psychiatric facility due to suicidal ideation, but concluded that "[t]he fact that this occurred within a month of [client] reporting his depression much improved . . . in conjunction [with] rapid stabilization at Davis Hospital (mood stable, affect calm, eating well, sleeping well, short term goal of a keeping a[n appointment] for 'job placement'[)]" constituted "no objective evidence of ongoing deterioration of psychiatric status." T. 181.

The ALJ concluded that "[t]he evidence supports [the psychological consultants'] conclusions" and despite "a brief hospitalization in January 2013,"

9

Moreno's "symptoms dramatically improved with a change in his medication regimen" and he had "not had other psychiatric hospitalizations during the relevant period." T. 17 (citing T. 740–41).

The ALJ also considered that Moreno's hospitalization records from January 2013 stated that Moreno "remained compliant and cooperative and participated with the discharge plan." T. 740. Moreno "seemed happy, pleasant, and appreciative of [the hospital's] efforts to stabilize him," and "coordinated with social work services" regarding discharge. T. 741.

The ALJ considered the neuropsychological assessment of Dr. Aharon D. Shulimson in October and November 2012, which concluded that "[Moreno]'s scores on tests of attention and concentration were not indicative of impairment" with respect to "attention/concentration/cognitive speed." T. 579. The ALJ carefully considered Moreno's test scores on a variety of tests that Dr. Shulimson administered, noting particularly that Moreno's test results bore out no symptoms of the traumatic brain injury that Moreno asserts. T. 14 (referring to T. 579–80).

The ALJ also cited the CDI Report, which "indicate[d] that [Moreno] was able to do a considerable amount of remodeling work on his home during the relevant period." T. 15 (referring to T. 1220). The Report's "Details of Investigation" convey Moreno's own statements that "he is a master electrician and has done/is doing all of the electrical work on the project," "he is planning to do rock work behind the stove and around the entrance door," that "he does the work 'when [he] [has] the money,'" and that he has "very good recall" of the details of the projects. T. 1220. According to the Report, Moreno also stated that "he loves to

ride 'his toy' [motorcycle]" and parked the motorcycle in at least three different locations during a one-week period. T. 1221. The CDI Report also describes Moreno as "well groomed and appropriately dressed," and his "speech []as clear, his thoughts organized, and he expressed himself well and with [no] [3] apparent difficulties." T. 1220.

The evidence detailed above and in the record as a whole constitutes substantial evidence supporting a finding of non-severe impairment. *See Salmond*, 892 F.3d at 817. Under this "highly deferential" standard, *Garcia*, 880 F.3d at 703, the court affirms the ALJ's conclusion that Moreno's alleged mental impairments did not constitute severe impairments.

### B. The ALJ's finding that Moreno could perform his past relevant work at the skilled light and medium levels is not based on substantial evidence.

At step three, the ALJ found that Moreno did not suffer an impairment that "meets or medically equals" a "listed impairment," which Moreno does not challenge. T. 17. Proceeding to step four, the ALJ determined that Moreno had the residual functional capacity to perform "medium" work, which includes lifting and carrying up to 50 pounds occasionally and 25 pounds frequently. Of the medical or non-medical source opinions in the record, none suggests Moreno can lift more than 20 pounds occasionally and 10 pounds frequently. Based solely on the CDI Report, the ALJ determined Moreno can lift and carry more than twice that. The ALJ's summary of his RFC analysis features—front and center—a fact that is not

---

[3] The omission of "no" in the report appears to be an inadvertent error.

part of the CDI investigator's findings of fact and appears nowhere else in the record: that Moreno "buil[t] a brick wall." T. 29. The ALJ's misapprehension of the CDI Report undermines the ALJ's factual analysis and weighing of the rest of the evidence.

### i.  Legal Standard

Moreno contends he experiences severe symptoms, such as pain and fatigue, that prevent him from working. T. 84, 85, 90, 91. When considering subjective evidence like a claimant's statements about his pain, the ALJ applies "an 'objective-subjective' two-step process." *Salgado v. Astrue*, 271 Fed.App'x. 456, 568 (5th Cir. 2008). First, the ALJ must "determine whether there is an impairment that reasonably produced the symptoms complained of." *Salgado*, 271 Fed. App'x at 568. If there is such an impairment, the ALJ takes the second step of "consider[ing] the applicant's statements about symptoms and the remaining evidence in the record to determine the strength of the symptoms and how the symptoms affect the applicant's ability to do basic work." *Id.* The ALJ "also determines the credibility of the applicant's claims about symptoms." *Id.* (citing 20 C.F.R. 404.1529(c)(1)); *see also* SSR 16–3p, 2016 WL 1119029 at *4–7 (Mar. 16, 2016) (clarifying 20 C.F.R. § 404.1529(c)).

In doing so, the ALJ considers all available evidence, including medical history, medical signs and laboratory findings, statements of treating providers, and the subjective testimony of the claimant. SSR 16–3p, 2016 WL 1119029 at *4–7 (Mar. 16, 2016). Although the ALJ is required to consider subjective evidence of pain and other symptoms along with other record evidence, the ALJ "may find . . .

that an applicant's complaints of pain are not to be credited or are exaggerated." *Johnson v. Heckler*, 767 F.2d 180, 182 (5th Cir. 1985).

### ii. Record Evidence

The record evidence includes the opinions of Dr. Stewart Ellington (T. 168–70) and Dr. Kimberlee Terry (T. 182–84), issued in April and July, 2013, respectively. Dr. Ellington and Dr. Terry reviewed evidence from Davis Hospital, Dr. Shulimson, Dr. Gardner, Lakeview Hospital, and Moreno's disability benefits applications. T. 163–65, 177–79. In Moreno's Disability Determination Explanation at both the initial and reconsideration levels, respectively, Dr. Ellington and Dr. Terry concluded that Moreno was limited to "occasionally" lifting and/or carrying twenty pounds and "frequently" lifting and/or carrying ten pounds—less than half the weight the ALJ ultimately concluded Morales was limited to lifting. T. 168–70, 182–84. They also found he was limited to standing and/or walking for a total of about 6 hours in an 8-hour workday, sitting for about 6 hours in an 8-hour workday, and occasionally climbing, balancing, stooping, kneeling, crouching, and crawling. T. 182–83. In explanation, Dr. Terry noted, in part, that Moreno "has a [history] of chronic back pain [treatment with] pain [medications] and ESIs." T. 184.

The record also includes the opinion of Moreno's treating pain management provider, Scott Werner, who "stated that lifting, twisting, and sitting for long periods precipitated [Moreno's] low back pain." T. 26 (referring to T. 854). Werner stated that during an entire 8-hour workday, Moreno can never lift more than 10 pounds and never carry any amount of weight. T. 854. Werner found that

"spinal injuries produce considerable pain" and "treatment will be needed for life." T. 854.

Finally, the record includes Moreno's examination by Dr. Jeremy Jones, a pain management physician, on August 9 and 30, 2016. T. 1244–49. Dr. Jones diagnosed Moreno with lumbar and cervical spondylosis without myelopathy, thoracic spondylosis, and chronic pain due to trauma. T. 21 (referring to T. 1246). Dr. Jones assessed "medication use [] to be appropriate [at] this time" and "g[a]ve [Moreno] 2 weeks supply of Butrans patch," to continue at one month intervals. T. 1246. Dr. Jones also scheduled Moreno for a lumbar medial branch block, which was performed on August 30 (T. 1248–49), because Moreno's "recent fall has flared up his facet mediated pain." T. 1246.

### iii. ALJ's Decision

Applying the "objective-subjective" test to this medical record, the ALJ found at the first step that "[Moreno's] medically determinable impairments could reasonably be expected to cause some of the alleged symptoms" based on the "medical evidence indicat[ing] that [Moreno] has significant degenerative disc disease in his cervical, thoracic, and lumbar spine and has sought medical treatment for back pain on a relatively consistent basis." T. 23. At the second step, the ALJ found that "[Moreno's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." T. 23.

Other than the CDI Report, the ALJ assessed each evidentiary source in the record to carry at most "partial" or "little" weight. The ALJ cited the CDI Report

as one basis for assigning "partial weight" to the opinions of the state agency medical consultants, Dr. Ellington and Dr. Terry. T. 26 ("the CDI investigation report indicates that the claimant has been actively remodeling his garage and doing *other kinds of construction work* at his home since his alleged onset date") (emphasis added). [4] The ALJ found that Drs. Ellington and Terry "underestimated" Moreno's residual functional capacity. It appears that the ALJ disagrees primarily about the amount of weight Moreno can lift.

The ALJ also cited the CDI Report in discrediting several other sources. *See, e.g.*, T. 23 ("[Moreno's] statements concerning . . . these symptoms are not entirely consistent" with the evidence, considering, e.g., four separate statements from the CDI report); T. 28 ("Ms. Moreno's statements are entitled to little weight in determining the claimant's residual functional capacity. . . . [T]he information in the CDI investigation report appears to contradict many of her statements.").

Having given little or no weight to most of the evidence relevant to Moreno's lifting ability, the ALJ found that Moreno "has exertional, postural, and manipulative limitations" but "does not have motor, neurological, or significant range of motion deficits." T. 29. The ALJ found that Moreno had the residual functional capacity "to perform medium work," in that

---

[4] Setting aside the likelihood that the ALJ believed "other kinds of construction work" to include "building a brick wall," it is not clear from the CDI Report or the ALJ's decision what work, exactly, Moreno personally did on any of his remodeling projects, or whether the capacity to do such work is inconsistent with the medical opinions in the record. In weighing the opinions of Dr. Terry and Dr. Ellington, the ALJ also cited the fact that Moreno walked down three steps and around his property without apparent difficulty. Those observations are not inconsistent with Moreno's assertions and medical opinions that Moreno is unable to stand, walk, or ride his motorcycle for *extended* periods of time. *See, e.g.*, T. 140 (Moreno testifying, in initial hearing before CDI investigation, that he could "mov[e] around" on his feet for "up to two hours").

> He **can lift and carry up to 50 pounds occasionally
> and 25 pounds frequently**. He can sit for a total of about
> six hours in an eight-hour workday with normal breaks,
> and stand or walk for a total of about six hours in an
> eight-hour workday with normal breaks. He does not
> require a sit/stand option. He can frequently balance,
> stoop, kneel, or climb ramps or stairs. He can
> occasionally crouch, crawl, or climb ladders, ropes, or
> scaffolds. He can frequently handle, finger, feel, or reach
> in all directions (including overhead) with his bilateral
> upper extremities. He does not have hearing, visual, or
> environmental limitations. He does not have mental
> limitations.

T. 19 (citing 20 C.F.R. § 404.1567 (designating as "medium work" that which
"involves lifting no more than 50 pounds at a time with frequent lifting or carrying
of objects weighing up to 25 pounds") (emphasis added)). Based on this RFC, the
impartial vocational expert at Moreno's hearing in September 2016 testified that
Moreno is able to perform the jobs of maintenance electrician, electrician,
production line, and contractor consistent with his residual functional capacity. T.
29; T. 114.[5] The ALJ thus found Moreno "capable of performing his past relevant
work." T. 29.

### iv. Analysis

This court must determine whether the ALJ's conclusions are legally sound
and based on substantial evidence. While the ALJ followed the proper legal
framework in making his decision, his analysis depended on a fundamentally

---

[5] The vocational expert testified that a claimant with the same residual functional capacity, but
limited to lifting ten pounds occasionally, would not be able to find employment in any of the
claimant's past relevant work and would have no transferable skills that would allow the
claimant to work. T. 115–16.

flawed reading of the CDI Report—that is, that Moreno built a brick wall. The ALJ discredited much of the evidence in the case based on the CDI Report, and the only source of information he accorded "great weight" was the CDI Report. Thus, central to the substantial evidence analysis is the ALJ's perception of the facts within the CDI Report.

The ALJ's assignment of "great weight" to the CDI Report and its role in discrediting many other sources of information is problematic. On the one hand, the ALJ recognized that the report contained information from an anonymous source that the ALJ deemed unreliable. T. 28. The ALJ stated he was not relying on the tip. T. 28. Yet, in his conclusion, he relies on factual allegations that came only from the anonymous tip:

> In sum, the undersigned based the above residual functional capacity assessment on the medical evidence and the CDI investigation report. . . . However, [Moreno] does not have motor, neurological, or significant range of motion deficits, and he has performed remodeling work on his property during the relevant period that **included building a brick wall** and doing electrical work.

Again, the CDI Report contains no factual finding that Moreno built a brick wall or stated that he built a brick wall. But this erroneous factual recitation lies at the heart of a number of the ALJ's credibility assessments and factual findings, and may have led to an erroneous RFC determination. *See Sleight v. Comm'r of Soc. Sec.*, 896 F. Supp. 2d 622, 635 (E.D. Mich. 2012) (reversing due to ALJ's factual misstatement).

Because the ALJ made an erroneous finding of fact that he then used as a central component of his evidentiary analysis, the court cannot conclude that the ALJ's decision is based on substantial evidence. The ALJ adopted as a fact that Moreno was capable of building a brick wall. He used that erroneous fact finding as a part of his basis for giving little weight to other evidence that Moreno can frequently lift up to only ten pounds. *Cf. Sleight*, 896 F.Supp.2d at 635 (reversing in part because factual misstatement may have caused ALJ to erroneously discount plaintiff's credibility). This mistake of fact is embedded in the ALJ's entire factual analysis. The only source of information before the ALJ that Moreno could lift "up to 50 pounds occasionally and 25 pounds frequently" was his erroneous interpretation of the CDI Report. The court recommends reversal and remand. *See Mathews v. Astrue*, No. 09-CV-385-FHM, 2010 WL 3168104, at *3 (N.D. Okla. Aug. 10, 2010) (reversing and remanding ALJ's determination based on erroneous factual recitations).

## Conclusion

The record reflects that the ALJ applied the correct legal standards in denying Moreno's disability benefits. The ALJ's determination that Moreno was not disabled during the relevant time period is not supported by substantial evidence in the record. A review of the pleadings and the record on file reflects that there is no genuine issue of material fact in this case, and summary judgment is therefore appropriate. Fed. R. Civ. P. 56(a), (c). Accordingly, the Court recommends that both parties' motions for summary judgment be **GRANTED IN PART** and **DENIED IN PART** as detailed in this opinion, and that the case be

18

**REMANDED** to the Commissioner for further proceedings in accordance with this opinion.

The parties have 14 days from service of this Memorandum and Recommendation to file written objections. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See* Rule 8(b) of the Rules Governing Section 2254 Cases; 28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72.

Signed at Houston, Texas on September 6, 2018.

_____
Peter Bray
United States Magistrate Judge